UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number:  12-22013-CIV-MORENO**

SERGIO E. SANTANA,

      Plaintiff,

vs.

LYKES EXCLUSIVE, LP,

      Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon defendant's Motion for Summary Judgment. Plaintiff Sergio E. Santana brought suit against defendant  Lykes Exclusive, LP for violations of the Fair Labor Standards Act's overtime provisions (29 U.S.C. § 207 ("FLSA")). In response, Lykes filed a motion for summary judgment challenging Santana's overtime compensation claims under the Act.  Santana contends that he is a non-exempt employee under the  Because Santana's claims fail to create a genuine issue of material fact, this Court grants Lykes' motion for summary judgment.

### I.   FACTS NOT IN DISPUTE

Defendant Lykes is a Texas corporation which operates a cartage and transportation business. The company is a motor carrier registered with the U.S. Department of Transportation and regulated by the Federal Motor Carrier Safety Administration. Specifically, Lykes provides ground transportation for cargo via commercial truck for compensation.

Plaintiff Santana worked for Lykes as a commercial truck driver from August 11, 2003 until February 27, 2012. During his employment with defendant, plaintiff Santana transported cargo to and from airports and other destinations throughout Florida. Most of the time, Plaintiff drove a 53-foot "tractor trailer" truck. The 53-foot truck driven by Santana weighed approximately 65,000 pounds. Occasionally, Santana also drove a 26-foot "box truck." For reasons discussed further below, the weight of the 26-foot truck is in

dispute.

Santana was paid $14.33 per hour for all hours worked during his employment. The parties agree that plaintiff never received overtime pay for the hours he worked in excess of 40 hours per week. In his complaint, plaintiff claims defendant's non-payment of overtime compensation is a violation of FLSA's overtime provisions. Defendant Lykes asserts that Santana was exempt from the overtime pay requirements of FLSA pursuant to the exemptions provided by the Motor Carrier Exemption, 29 U.S.C.§ 213(b)(1). Defendant moves for summary judgment on the same grounds.

## II.  LEGAL STANDARD

A court shall grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Consequently, the movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of `the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In evaluating whether the movant has met this burden, a court must view all the evidence in the light most favorable to the non-moving party. Once the movant has met its burden under Rule 56, the burden of production shifts and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Additionally, an employer seeking to assert an FLSA exemption has the burden of proving that the employee falls "plainly and unmistakably within the terms and spirit" of the exemption." *Morrison v. Quality Transports Services*, Inc., 474 F. Supp. 2d 1303, 1308 (S.D. Fla. 2007); *see also Nicholson v. World Bus. Network, Inc.*, 105 F.3d 1361, 1364 (11th Cir.1997) (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945).Due to the statute's remedial nature, exemptions from FLSA's coverage are generally construed narrowly against the employers seeking to assert them. *Morrison*, 474 F. Supp. 2d  at 1308 (citing *Arnold*

*v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)). However, the Motor Carrier Act, the statute which provides the exemptions at issue in this case, is likewise a remedial statute and should also be broadly construed. *Galbreath v. Gulf Oil Corp.*, 413 F.2d 941, 946 (11th Cir. 1969) (quoting *Crescent Express Lines v. United States*, 320 U.S. 401, 409 (1943)).

### III.   DISCUSSION

Defendant has moved for summary judgment on the grounds that plaintiff is an exempt employee under the Motor Carrier Exemption to FLSA's overtime provisions and thus not entitled to overtime pay. 29 U.S.C. § 213(b)(1). Plaintiff contends that Santana is not exempt from FLSA's overtime pay requirements for two reasons. First, plaintiff argues that Santana falls within the "Small Vehicle" exception to the Motor Carrier Exemption because he drove, at least part of the time, a motor vehicle weighing 10,000 pounds or less. D.E. No. 35 at 4 (citing SAFETEA-LU Technical Corrections Act of 2008, Pub. L. No. 110-244, 122 Stat. 1572, 1620 (2008)). Second, Plaintiff argues that the exemption at 49 U.S.C. § 13506(a)(8)(B), which he refers to as the "Incidental to Air Exception," deprives the Secretary of Transportation of jurisdiction to regulate truck drivers' hours and therefore removes Santana from the Motor Carrier Exemption. D.E. No. 37 at 3, 7. The Court addresses these arguments in turn.

### The Motor Carrier Exemption

FLSA exempts from its overtime provisions "any employee with respect to whom the Secretary of Transportation has the power to establish qualifications and maximum hours of service pursuant to the provisions of [the Motor Carrier Act]." *Walters v. American Coach Lines of Miami, Inc.*, 569 F. Supp. 2d 1270, 1281 (S.D. Fla. 2008) (quoting 29 U.S.C. § 207(a) (1)). The Motor Carrier Exemption applies to employees for whom the Secretary of Transportation has the power to establish qualifications and maximum hours of service. 49 U.S.C. § 31502(b)(2) gives the Secretary of Transportation the general power to prescribe "qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of operation." Whether the Motor Carrier Exemption

applies "is dependent on whether the Secretary has the power to regulate, not on whether the Secretary has actually exercised such power." *Baez v. Wells Fargo Armored Servo Corp.*, 938 F.2d 180, 181 n.2 (11th Cir. 1991); *see also Walters v. American Coach Lines Of Miami, Inc.*, 575 F.3d 1221, 1226 (11th Cir. 2009) ("[T]he Secretary of Transportation does not have to exercise the authority granted to him by the MCA for the motor carrier exemption to be applicable; instead, his power to regulate under the act merely needs to cover a particular group of employees.").

According to the Department of Labor regulations enforcing the FLSA, the applicability of the Motor Carrier Exemption "depends both on the class to which [the employee's employer] belongs and on the class of work involved in the employee's job." 29 C.F.R. § 782.2(a). Thus, to qualify for the Motor Carrier Exemption, the employer must establish three things: (1) that it is a carrier whose transportation of passengers or property by motor vehicle is subject to the Secretary of Transportation's jurisdiction, i.e., its transportation of passengers or property takes place in interstate commerce; (2) the employee is a driver, driver's helper, loader, or mechanic; and (3) the employee engages in activity that affects the safety of operation of motor vehicles in the transportation of passengers or property in interstate or foreign commerce. See 29 C.F.R. §§ 782.2(a)-(b) (2).

In the present case, the parties agree that the defendant meets the first criterion, and that the plaintiff meets the second and third. D.E. No. 24 at 7, 8.

*The "Small Vehicle" Exception*

Rather than contest the Motor Carrier Exemption's application to both employer and employee, the plaintiff argues that he is nevertheless covered by the FLSA's overtime provisions under the "Safe, Accountable, Flexible, Efficient Transportation Equity Act: a Legacy for Users Technical Corrections Act of 2008," or "Small Vehicle" exception to the Motor Carrier Act. Under this exception, the Motor Carrier Exemption does <u>not</u> apply to a driver, driver's helper, loader, or mechanic in any workweek in which their work affects the safe, interstate operation of motor vehicles weighing 10,000 pounds or less. *See* U.S.

-4-

Department of Labor –Wage and Hour Division, Field Assistance Bulletin: No. 2010-2, Exhibit B49.

*Vehicles driven by Santana*

The first contested issue in this case, therefore, is whether or not the plaintiff drove trucks weighing under 10,001 lbs and is therefore covered by the Small Vehicle exception. The defendant asserts that Santana drove two kinds of trucks, a tractor-trailer, which weighed approximately 65,000 pounds, and a "standard box truck." *See* D.E. No. 24 at 8; D.E. No. 25 at 6. Lykes provides the rental agreements and registrations for all the trucks driven by the plaintiff, and an affidavit from a company area manager attesting to the fact that the smallest trucks driven by plaintiff each weighed in excess of 26,000 pounds. D.E. No. 26-3. The plaintiff, on the other hand, points to a company dispatcher's deposition testimony, which states that one of the vehicles driven by plaintiff weighed "ten thousand pounds." D.E. No. 27-1 at p. 15:17-19. The relevant deposition testimony follows:

Q. Okay. And what other trucks did Mr. Santana use at Lykes?

A. He would occasionally use a 26 footer.

Q. 26- foot what?

A. It was a regular truck.

Q. A regular truck?

A. Yes.

Q. Do you agree that the 26 footer is a less than a ten thousand pound vehicle, correct?

A. Those trucks do weigh ten thousand pounds.

Q. Do you know the weight of the 26-foot vehicle that Mr. Santana drove?

A. Those are the ten thousand-pound trucks.

Q. No. I mean the actual weight. Do you know the weight of the 26-foot vehicle that Mr. Santana utilized?

A. Ten thousand pounds.

Q. Exactly?

A. That's what the paperwork says.

Q. That's why I am asking. So you agree that the truck - well, actually - strike that. Is it your testimony

that the truck Mr. Santana drive, the 26- foot truck you described, weighed exactly ten thousand

pounds.

A. Well, you would have to look at the paperwork where it is registered with Ryder to see that.

Q. And what is the type of paperwork we would have to secure in that regard to determine the exact

vehicular weight of that 26-foot vehicle you just described?

A. The registration.

Q. What is the make, model, and year of the vehicle you just described?

A. I think it is a 2003 International.

Q. Does it have a particular model number other than the year and make,

A. It has a unit number.

Q. What's that?

A. It's 404745 or 404746 or 404747.

Q. You have a better memory than I do.

A. Sometimes.

D.E. No. 27-1 at pp. 15-16.

Santana relies on the dispatcher-witness's initial statement, that the weight of the 26-foot trucks are

"ten thousand pounds," to support his contention that there are genuine issues of material fact precluding the

entry of summary judgment on the Small Vehicle exception issue. However, this statement was later qualified

by the witness, who cautioned that only the "registration" paperwork corresponding to the truck would list

the vehicle's exact weight. *See* D.E. No. 27-1 at 16:9. The registrations, which the witness identified by

number, clearly establish that the 26-foot trucks driven by the plaintiff each had gross vehicle weights of

26,000 pounds. D.E. 26-3 at pp. 10, 11, 12. In addition, it is undisputed that Santana drove a 53-foot tractor trailer and a 26-foot "box" truck while employed by the defendant. *See* D.E. No. 36 at p. 2. There are no box trucks or tractor trailers weighing 10,000 pounds or less in Lykes' fleet of leased vehicles. *See* D.E. No. 27-1 at pp. 17-18. Finally, at no point in his deposition or in his answers to the defendant's interrogatories does Santana state that he drove any truck weighing less than 10,000 pounds. This Court does not find that the dispatcher's inability to recollect the exact weight of the 26-foot trucks to be enough to create an issue of material fact as to whether Santana is a non-exempt employee the Small Vehicle exception.

### The "Incidental-to-Air" Exception

The second contested issue is whether Santana is a non-exempt employee under one of the miscellaneous motor carrier transportation exceptions listed at 49 U.S.C. § 13506. The exception in question, section 13506(8)(B), restricts the Secretary of Transportation and Surface Transportation Board's jurisdiction over

> ... transportation of property (including baggage) by motor vehicle as part of a continuous movement which, prior or subsequent to such part of the continuous movement, has been or will be transported by an air carrier or (to the extent so agreed by the United States and approved by the Secretary) by a foreign air carrier[.]

49 U.S.C. § 13506(8)(B). As pointed out by the defendant, Santana erroneously refers to section 13506(8)(B) as the "Incidental-to Air" exception. *See* D.E. No. 37 at 8. The distinction is an important one, however, as the United States Court of Appeals for the Eleventh Circuit has already decided that the "Incidental-to-Air" exception, which is found at section 13506(8)(A) of the Motor Carrier Act,[1] does not eliminate the Secretary of Transportation's authority to regulate maximum hours under FLSA. *See Walters v. American Coach Lines Of Miami, Inc.*, 575 F.3d 1221, 1232-33 (11th Cir. 2009).

The "Incidental-to-Air" exception does not apply here as that limitation on the Secretary of Transportation's jurisdiction deals with the movement of passengers, not goods and cargo. Both parties

---

[1] The "Incidental-to-Air" exception divests the Secretary of Transportation of jurisdiction over the "transportation of passengers by motor vehicle incidental to transportation by aircraft[.]" 49 U.S.C. § 13506(8)(A).

concede, however, that Santana did make frequent trips to and from Miami International Airport--the kind of activity that could conceivably fall under the section 13506(8)(B) exception, which covers the "transportation of property (including baggage) ... [that is] part of a continuous movement which ... has been or will be transported by an air carrier[.]" 49 U.S.C. § 13506(8)(B). The plaintiff argues that this airport exception limits the Secretary of Transportation's jurisdiction over the movement of cargo to and from airports and thereby divests him of his authority to regulate maximum hours in this area. *See* D.E. No. 5 at 7-9 (citing *Mielke v. Laidlaw Transit, Inc.*, 102 F. Supp. 2d 988, 990 (N.D. Ill. 2000)). The defendant, in response, points to Eleventh Circuit case law dismissing similar arguments. *See* D.E. No. 37 at 9 (citing *Walters*, 575 F. 2d at 1232-33.

### The "Airport" Exception

In arguing that the section 13506 exceptions should be read to limit the Secretary's authority over overtime issues, the plaintiff points the Court to the case of *Mielke v. Laidlaw Transit, Inc.*, which held that school bus drivers were due overtime pay under the FLSA because they fell plainly within the scope of a section 13506 exception to the Motor Carrier Exemption.

> Because the plaintiffs here are school bus drivers, pursuant to 49 U.S.C. § 13506(a)(1), the Transportation Department does not have jurisdiction over them. Thus, the Department does not have the power to set their qualifications and hours, and the Motor Carrier Act exemption, found in 29 U.S.C. § 213(b)(1), does not bar the plaintiffs' FLSA suit.

102 F. Supp. 2d at 992. In reaching its holding, the *Mielke* court found that section 13506 was a list of individuals and activities which are exempted from the provisions defining the Transportation Department's jurisdiction with regard to motor carriers. *See id.* at 990. The plaintiff follows the *Mielke* court's reasoning in asserting that section 13506 exempts the listed individuals and activities from the jurisdictional grant of section 13501. D.E. No. 35 at 8 (citing *Mielke*, 102 F. Supp. 2d at 990). Consequently, the plaintiff argues, the reference to "motor carrier[s]" in section 31502(b), which empowers the Secretary to regulate qualifications and hours, does not include the individuals and activities listed in section 13506. *Id.* (citing *Mielke*, 102 F. Supp. 2d at 990).

-8-

Unfortunately for the plaintiff, this is the same line of reasoning that was rejected by the Eleventh Circuit in *Walters*.

> Appellants cite one case, *Mielke v. Laidlaw Transit, Inc.*, 102 F. Supp. 2d 988 (N.D.Ill.2000), reaching a contrary holding, i.e., that such an exemption would eliminate the Secretary's MCA jurisdiction over all matters relating to a particular motor carrier, including with respect to the regulation of hours and safety. *See Mielke*, 102 F. Supp. 2d at 990-92. That court focused principally on the statutory text and found that the reference to "this part" had to be read as referring to the totality of the Secretary's regulatory power. *See id.* However, no other court appears to have adopted this rationale, and the few that have addressed this issue since *Bilyou* and *Mielke* have followed the interpretation of the former.

575 F. 3d 1221, 1232-1233. The weight of authority discussed in *Walters* lends further support to the defendant's argument that section 13506 does not deprive the Secretary of authority to regulate safety hours relating to the individuals and activities listed there. *See Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217, 225-29 (2d Cir. 2002) (finding 49 U.S.C. § 13505, which divests the Secretary of jurisdiction under "this part" over transportation, addressed solely economic matters and therefore did not limit the Secretary's jurisdiction over issues relating to safety and hours); *King v. Asset Appraisal Servs., Inc.*, 470 F. Supp. 2d 1025, 1031-32 (D. Neb. 2006) (tracking *Bilyou*'s rationale in finding section 13505 does not deprive the Secretary of authority to regulate hours); *see also Dauphin v. Chestnut Ridge Transp.*, Inc., 544 F. Supp. 2d 266 (S.D.N.Y. 2008) (rejecting *Mielke*'s reasoning and finding that the operative language of section 13506 is identical to that of the section 13505).

Here, the Court is presented with a slightly different question than in *Walters*, but sees no reason to arrive at a widely disparate result. The Court finds persuasive Lykes' argument that since the airport exception at issue here, like the incidental-to-air exception discussed in *Walters*, appears in section 13506, it is likewise not meant to divest the Secretary of his jurisdiction over matters such as maximum hours. *Walters*' conclusion, that the incidental-to-air exception contained in section 13506 relates to economic but not safety regulations, is easily extended to the airport exception contained in subsection 13506(a)(8)(B). Accordingly, for the reasons set forth above, it is

**ADJUDGED** that Defendant's Motion for Case Dispositive Summary Judgment is GRANTED.

Pursuant to Fed. R. Civ. P. 56 and 58, and for the reasons stated above, the plaintiff's complaint is DISMISSED and the case is CLOSED.

DONE AND ORDERED in Chambers at Miami, Florida, this 13th day of March, 2013.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record

-10-